THE CITY OF OCONTO vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

CAUSE OF ACTION. *Liability of railroad company for repairs of streets, made by street commissioners, but which the company should have made.*

1. By a city charter, the common council have full power over the streets and sidewalks, and authority to keep them in repair; and the street commissioners are authorized to make all necessary repairs therein. A railroad company, after constructing its road through certain of the streets, neglected, though requested by the commissioners, to restore such streets, and the sidewalks thereon, to their former condition of usefulness, as the statute requires (Tay. Stats., 1036, § 1); and the commissioners procured the necessary repairs to be made, for which payment was made by the city. *Held*, that the city may recover from the company all reasonable expenses so incurred.

2. Provisions of the charter establishing the general policy of repairing streets and sidewalks, under the direction of the street commissioners, *at the expense of adjoining lots*, *held* inapplicable to the repairs in question.

3. The fact that the commissioners did not keep a record of their acts, pass any formal order, or enter into a written contract for the work done, *held* not to affect the city's right of action for the amount actually and necessarily expended.

4. The railroad company, whose neglect of its own legal duty compelled the city to make the repairs, is not in a position to question, on technical grounds, the authority of the council to appropriate city funds to pay for the same.

APPEAL from the Circuit Court for *Oconto* County.

The complaint alleges that the defendant company constructed a section of its road across certain streets of the

plaintiff city, and thereafter, though often requested so to do, neglected and refused to restore said streets to their former condition, so as not to impair their usefulness; and that the plaintiff, in 1872 and 1873, expended large sums of money to restore said streets to their former condition, and make them suitable for public travel, amounting to $859.05. A bill of particulars was annexed. The answer was a general denial.

The charter of the plaintiff city (P. & L. Laws of 1869, ch. 449) empowers the common council, " by ordinance, resolution or by-law," " to lay out, make, open and keep in repair, alter or discontinue, any highways, streets, lanes, alleys, and to keep them from incumbrances, and to protect them from injury " (ch. IV, sec. 3). Ch. VII, entitled " City Improvements," contains the following provisions:

" Sec. 1. The aldermen of the several wards shall be the street commissioners in and for their respective wards, two of whom shall be a quorum, whose meetings shall be held at the office of the city clerk. The city clerk shall be clerk of the board of commissioners, and shall keep a record of all their acts and doings, and shall keep and preserve all contracts, receipts and papers of the board.

" Sec. 2. Any person deeming himself aggrieved by an act of the board of street commissioners . . . may . . . appeal to the common council, who shall inquire into, examine and correct the act or order complained of. [It further authorizes an appeal from the determination of the council to the circuit court for Oconto county.]

" Sec. 3. The said street commissioners shall have power to order and contract for the making, grading, repairing and cleaning of streets, . . . within their respective wards, and to direct and control the persons employed therein. Whenever the street commissioners shall deem it necessary to construct or repair any sidewalk within their ward, they shall direct the owner or occupant of any lot adjoining such sidewalk to make or repair the same at his own proper cost and

charge.   If such work is not done in the manner and in the time prescribed, the commissioners shall cause the same to be done at the expense of the lot adjoining such sidewalk.   The street commissioners shall not have power, except as hereinafter provided, to make and grade  . . .  any streets  . . or to construct any sidewalk,  . . .  unless the same has been first duly authorized by ordinance of the common council,  . . .  *provided,* nothing herein shall be so construed as to prohibit such street commissioners from making or causing to be made all necessary repairs to any sidewalk or street.  . . .  If, however, the common council order any special improvement to be made,  . . .  the vote therefor of the aldermen shall be taken by yeas and nays, and entered upon the journal of the proceedings of said council; and no special improvement shall be valid or binding unless said vote be so taken and entered upon the journal.

" Sec. 4. Opening, grading, working, graveling  . . . streets and alleys to the center thereof, shall be chargeable and payable by the lots fronting on such street or alley.  . . Sewers may be ordered by the street commissioners, and built at the expense of the lots  . . .  benefited thereby;  . . . *provided,* that in all cases where improvements or work of any kind are charged by virtue of this section upon lots benefited, all such improvements across streets, alleys and public grounds shall be made and paid for out of the general fund of the city.

" Sec. 7. After the completion and performance of any contract entered into by the street commissioners for work chargeable to lots and lands by virtue of this act, they shall give to the contractor or contractors a certificate under their hands, stating therein the amount of work done by such contractor, the nature thereof, and the description of the lot or parcel of land upon which the same is chargeable. [If the amount is not duly paid, it is to be assessed upon the land affected, for the benefit of the holder of the certificate.]

" Sec. 9. The street commissioners of the several wards are

hereby authorized to require, by such general regulations as they may choose to adopt, the owners or occupants of the several lots within their respective wards, to cleanse and repair the sidewalks, streets and alleys, and employ any person or persons whose duty it shall be to make repairs and cleanse such streets, alleys and sidewalks." [In default of payment, a tax is to be assessed against such lots for the work so done.]

The charter contains these further provisions: "All work for the city or either of the wards,    . . .    shall be let by contract to the lowest bidder, and due notice shall be given of the time and place of letting the contract." " No money shall be appropriated for any purpose whatever, except such as is expressly authorized by this act." " No appropriation shall be made without a vote of a majority of the members of the common council in its favor, which votes shall be taken by ayes and noes, and entered among the proceedings of the council."

After plaintiff rested, the court denied defendant's motion for a nonsuit; and after the evidence was all in, it instructed the jury that, to entitle plaintiff to recover, it must prove, 1. That defendant, in constructing its road on and across the streets of the city, put and left the streets and sidewalks in such condition that they were impassable, or were materially injured in their usefulness for public travel. 2. That before the city undertook, by its street commissioners, to repair such streets and sidewalks, defendant, its agents, or its officers in charge of the road, were requested by the city to make the necessary repairs, and had reasonable time and opportunity to do so before the city authorities undertook to do it. 3. That the condition in which such streets and sidewalks were placed and left by the company, was such as to render it necessary for their public use that they should be put in repair. 4. That the city, by order of the street commissioners of the proper ward or wards, ordered or authorized the repairs to be made, and that they were made by such order or authority. 5. That the

expense of the repairs was reasonable in amount, and actually paid by the city. The court added: "If these facts are all proven, plaintiff is entitled to recover. In determining whether the expenses paid by the city for the work were reasonable in amount, you should consider whether the sums were reasonable for the work necessary to be done, and for the lumber and other material necessarily used, in order to put the streets and sidewalks injured in as good a condition as they were before the railroad crossed them, except so far as the track and the use of the railroad itself might affect the travel thereon."

Verdict for the plaintiff, for $773.52. The court afterwards ordered that defendant's motion for a new trial should be granted unless plaintiff should remit the sum of $163, being the charge for the first construction of a certain culvert, which was subsequently washed out and was reconstructed at the expense of the city, the cost of such reconstruction being also charged to the defendant. Judgment was rendered for the plaintiff for the damages assessed by the verdict, less the amount so remitted; and the defendant appealed.

For the appellant, briefs were filed by *L. S. Dixon* and *B. J. Brown*, and the cause was argued orally by *Mr. Brown*. They contended, 1. That municipal corporations can exercise only those powers which are expressly granted, or fairly implied in or incident to the powers granted, or essential — not simply inconvenient, but indispensable — to the objects and purposes of the corporation (Dillon's M. C., § 55); that, like courts of inferior and limited jurisdiction, they must show the power given them in every case *(Dunham v. Rochester*, 5 Cow., 465; *Hayes v. Appleton*, 24 Wis., 544); that, where the mode in which their power on any subject is to be exercised, is prescribed by charter, that mode must be followed, and constitutes the measure of the power *(Zottman v. San Francisco*, 20 Cal., 96; *Kneeland v. Milwaukee*, 18 Wis., 411); and that, where municipal bodies are required to keep records of their official action, in the legislative business trans-

acted at their meetings, the whole policy of the law would be defeated if their proceedings could rest partly in writing and partly in parol. *Stevenson v. Bay City,* 26 Mich., 46. 2. That the court erred in refusing to nonsuit the plaintiff. (1) The commissioners had no power to do the work at the railroad crossings at the general charge of the city, and thereupon found a claim against the defendant. *Second National Bank v. Lansing,* 25 Mich., 207. The charter is explicit that no such improvements, except across streets, alleys and public grounds, shall be made and paid for out of the general fund of the city. The words "across streets," are here equivalent to "street crossings"— the intersections of two or more streets; and in respect to most of the work here, there is no pretense that it was made at such intersections. If the company failed to restore streets intersected by their track to their former condition of usefulness, the performance of that duty might have been summarily enforced by *mandamus.* Pierce on R. W., 506; *Reg. v. B. & G. Railway Co.,* 42 E. C. L., 565; *Reg. v. M. & L. Railway Co.,* 43 id., 851. The city was neither obliged to incur the expense of the work, under its charter, nor had it the power to do so. If individual lot-owners were injured, they had their remedy by action. If, after a lot-owner puts down a sidewalk, some one removes it, the city is under no obligation to restore the walk, but the lot-owner must replace it. (2) The commissioners did not comply with the charter in respect to any of the work. The evidence shows that they held no meetings, kept no record of their acts, passed no order, made no contract; and the action proceeds upon the assumption that all this was immaterial. There is no middle ground between a substantial compliance with the provisions of the charter and a total disregard of them. If the commissioners were bound by no rule except their own will, how does the work differ from a performance of the work by mere volunteers? (3) The action of the council could not give validity to that of the commissioners. By

the charter, the council cannot authorize any special improvement except by a vote by ayes and nays entered upon their journal; and if its powers were plenary, it could not ratify the work by any less formal act than would be required in authorizing it. No action of the council thus evidenced appears in the case. *Steckert v. East Saginaw*, 22 Mich., 104. Moreover, the commissioners are in no sense the agents of the council, but are an independent board, exercising ·functions devolved upon them by law, and exclusive within the sphere of their duty; and the council has no dispensing power to set aside the statutes. (4) The action of the council in respect to the bills of the persons by whom the work was done, was not a valid appropriation of the funds of the city, because no such appropriation can be made under·the charter except by a vote taken by ayes and nays, and entered upon the journal. *Steckert v. East Saginaw, supra.* 3. That the court erred in its instructions to the jury in using the word "ordered" as synonymous with the word "authorized"— thus leaving it to the jury to find, without any evidence tending to show the fact, that the commissioners had made the "order" required by the charter. 4. That for some of the items allowed by the jury there was no evidence whatever, and it was therefore error to refuse a new trial.

For the respondents, briefs were filed by *Hastings & Greene*, and the cause was argued orally by *Mr. Hastings*. They contended, 1. That, defendant having refused or neglected to repair the streets and walks, it was the right and duty of the city to do so, because upon it, as to the public, devolved the duty of keeping the streets in proper order (*Veazie v. R. R. Co.*, 49 Me., 119, 124; *Town of Newlin v. Davis*, 77 Pa. St., 317; *Penn. R. R. Co. v. Borough of Irwin*, 5 Reporter, 121; *Kittredge v. Milwaukee*, 26 Wis., 47; *Hammond v. Town of Mukwa*, 40 id., 35); and plaintiff may therefore recover the reasonable cost of the work. *Penn. R. R. Co. v. Irwin*, and *Town of Newlin v. Davis, supra; P. & B. Passenger R. R.*

*Co. v. Birmingham*, 51 Pa. St., 41. This is on the same principle upon which the company would be bound to indemnify the city in case the latter had been required to pay damages to one injured by the defect in the highway occasioned by the company's acts ( *Veazie v. R. R. Co., supra; Lowell v. Railroad Co.*, 23 Pick., 24; *Inhabitants of Woburn v. R. R. Co.*, 109 Mass., 283; *Hamden v. N. H. & N. Co.*, 27 Conn., 158; *Chicago v. Robbins*, 2 Black, 418; *Robbins v. Chicago*, 4 Wall., 657); or in case the company had been under a contract obligation with the city to keep the streets in repair. *City of Brooklyn v. R. R. Co.*, 47 N. Y., 476; *Inhabitants of Woburn v. Henshaw*, 101 Mass., 193.  2. That, defendant being liable for the reasonable cost of the repairs, and it being plaintiff's right and duty to make them, the only questions upon which defendant could be heard were, whether the city made and paid for the repairs, and what they were reasonably worth. The provisions of the city charter prescribing the manner in which work chargeable to the adjoining lots or to the general fund must be done, were enacted for the protection of the taxpayers, and not for the benefit of wrong-doers creating nuisances in the public streets.  Counsel further contended that all the work was done on street crossings, and was necessarily done at the expense of the city; and that the provisions of the city charter requiring work to be let to the lowest bidder, or to be charged to the adjoining lots, had no application to a case like this; but that the evidence in fact showed a letting of the contracts in the manner required by charter in other cases.

Cole, J.  It was the plain duty of the defendant corporation to restore all highways and sidewalks intersected or crossed by its track, to their former state of usefulness. This obligation or duty was expressly imposed upon it by the very statute which granted it authority to cross any highway in the construction of its road.  Tay. Stats., ch. 76.  The grava-

men of the complaint is, that the defendant, in the fall of 1871, constructed its track across five or more steets of the city in such a manner as not only temporarily to injure the streets and impede the public travel thereon, but also to permanently impair their usefulness.   It is alleged that the defendant neglected to restore such streets to their former condition, though often requested so to do, and that the city was compelled to expend large sums of money in repairing the streets and sidewalks, and rendering them suitable for public use. The action is brought to recover the expenses the city incurred in making these repairs.   There was surely abundant testimony offered to sustain these allegations of the complaint; and we therefore think the court below was right in refusing to grant a nonsuit.

The main objection relied on to defeat a recovery is, that the city, in making the repairs, did not comply with the provisions of the charter regulating the manner in which such work should be done and paid for.   It is said that the rule is general, and applicable to municipal corporations, that where the mode in which the power on a given subject can be exercised, is prescribed in the charter, this mode must be followed in order to give validity to the acts of the corporate authorities.   It is not necessary to question or controvert the correctness of this proposition, in affirming this judgment.   In doing the work, the city authorities seem to have substantially complied with the provisions of the charter applicable to the case. It is objected that the street commissioners had no power to do the work alleged to have been done on these crossings, at the general charge of the city, and thereupon found a claim against the defendant.   The city was certainly bound to keep its streets in proper repair, and, if it neglected to perform that duty, the law is well settled in this state, that it would be liable for injuries to private persons caused by defective and unsafe streets and sidewalks.   The common council have full control over the streets and sidewalks of the city, and ample

authority is given them to keep them in repair. The general plan or economy of the charter is, that repairs should be made, under the direction of the street commissioners, at the expense of the adjoining lots. This is obvious from chapter 7 of the charter. Consequently, power is given the street commissioners to order and contract for repairing streets and sidewalks within their respective wards, at the expense of the adjoining lots, when the owners neglect to do the work in the manner and within the time prescribed by the commissioners. Sec. 3, ch. 7. But it is provided in the same section, that "nothing herein shall be so construed as shall prohibit such street commissioners from making, or causing to be made, all necessary repairs to any sidewalk, street," etc. But we do not think the repairs contemplated by the charter to be made at the expense of the adjoining lots, were those rendered necessary in consequence of a railroad company constructing its road across or over the sidewalk or street. For repairs of the latter character the law positively and clearly enjoins upon the railroad company to make. Of course, if the repairs were made at the expense of the lot-owner, the lot-owner should have his action against the railroad company for money expended for its use; and thus the corporation would be subjected to as many actions as there were lot-owners who had made repairs. Perhaps the railroad company would have no just ground to complain that it was subjected to numerous suits growing out of its failure to perform a plain legal duty; but still it is not the policy of the law to encourage unnecessary litigation. And, under the above proviso, we have no doubt that the street commissioners had authority to make the repairs on the streets and sidewalks which were rendered necessary by the construction of its road over them by the defendant. If such streets and sidewalks were actually left in a dangerous and impassable condition by the railroad company, the street commissioners were clearly authorized, under the circumstances, to cause them to be put in suitable repair.

The City of Oconto vs. The Chicago & Northwestern R'y Co.

But it is said that the commissioners did not comply with the provisions of the charter in respect to doing the work; that is, did not keep a record of their acts, passed no formal order, and made no written contract for the execution of the work. The evidence tends to prove, and under the charge of the court the jury must have found, that the city, by the order of the street commissioners of the ward in which repairs were rendered necessary by the acts of the defendant, authorized the repairs to be made, and that the expense of the repairs so made was reasonable in amount, and actually paid by the city. The jury were told that, in determining whether or not the expenses incurred and paid by the city for the work in question were reasonable in amount, they should consider whether the sums paid were reasonable for the work which was necessary to be done, and for the lumber and other material necessarily used in order to put the streets and sidewalks injured in as good condition as they were before the railroad crossed them. All the questions of fact seem to have been fairly submitted, and we really see no force in the technical objections taken to the action of the street commissioners in ordering and causing the repairs to be made. We must assume that the jury found, under the direction of the court, that the agent of the company, having charge of the building of the road, was notified and requested by the city authorities to make the necessary repairs, but wholly neglected or failed to make them. And we do not think the defendant is now in a position or has any right to question the action of the common council in appropriating the funds of the city to pay for these repairs.

We think this disposes of all the material questions in the case, and that the judgment must be affirmed.

*By the Court.* — Judgment affirmed.

Ryan, C. J., and Lyon, J., took no part.